FILED

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAY 1 6 2000

*Robert M. March*
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE R. SISNEROS,

        Plaintiff,

vs.                                  No. CIV 97-1608 MV/LFG

KENNETH S. APFEL, Commissioner,
Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

Plaintiff Jose R. Sisneros ("Sisneros") invokes this Court's jurisdiction under 42

U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social

Security ("Commissioner"). The Commissioner determined that Sisneros was not eligible for

disability insurance benefits. Sisneros moves this Court for an order reversing the

Commissioner's final decision and remanding for a rehearing.

### Factual Summary and Procedural History

Sisneros was born on September 6, 1940. He was 53 years old at the time of the

administrative hearing in this case. He has an Associate's Degree in business administration

from the College of Santa Fe (Tr. 47, 432-433) and worked for 21 years at the New Mexico

Penitentiary as a correctional officer, storekeeper, purchasing analyst, and inventory officer.

---

[1]Within ten (10) days after a party is served with a copy of the legal analysis and
recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to
such analysis and recommendations. A party must file any objections within the ten day period
allowed if that party wants to have appellate review of the analysis and recommendations. If no
objections are filed, no appellate review will be allowed.



(Tr. 83-85, 128-130, 434-440). He alleges he has been unable to work since June 15, 1984 due to problems with his back, neck, ankle, knee, and liver, as well as a gastric ulcer and a heart attack.

Sisneros filed three previous applications for Social Security benefits. In the first, filed July 27, 1984, he alleged disability based on a back injury with an onset date of June 15, 1984. (Tr. 32). Following a hearing, this application was denied in a decision by Administrative Law Judge ("ALJ") Poverstein dated December 23, 1985. (Tr. 101). Sisneros requested review of this decision, but his request was untimely and the Appeals Council refused to consider it. (Tr. 108).

In his second application, dated February 22, 1989, Sisneros alleged disabilities including a heart attack and problems with his back, neck, shoulder, and ankle, with an onset date of June 15, 1984. This application was denied initially and on reconsideration, and Sisneros sought no further review. (Tr. 16, 110-148).

His third application, dated October 5, 1990, was denied on grounds the application covered the same issues decided on an earlier claim, and the information submitted did not show any change in Sisneros' condition before December 31, 1985, his date last insured. (Tr. 152). Sisneros sought reconsideration of this decision, but upon denial he pursued the matter no further. (Tr. 16, 153).

Sisneros' fourth application was filed on March 8, 1993. In this application, he alleged disabilities including a heart attack in 1986, an enlarged liver, gastric ulcer, ligament damage to his left knee, laminectomy surgery in 1982, cervical fusion surgery in January 1990, low back fusion in January 1992, and multiple fractures of the right ankle. His application was

2

denied at the initial and reconsideration stages, and he sought timely review from an ALJ.

A hearing was held before ALJ Carol A. Connor on January 21, 1994. In her decision on this fourth application, ALJ Connor determined that Sisneros' second and third applications, filed in 1989 and 1990, should be reopened. However, she expressly held that ALJ Poverstein's decision of December 23, 1985 was *res judicata* as to Sisneros' first application for benefits, filed in 1984, and therefore "my review is limited to the issue of his work-related functional capacities between that date [December 23, 1985] and December 31, 1985, the date he last held insured status for the purposes of Title II disability eligibility." (Tr. 16-17). ALJ Connor held that Sisneros was not entitled to a period of disability or disability benefits.[2] The ALJ's decision was upheld by the Appeals Council on October 27, 1997. (Tr. 6-7). This appeal followed.

## Res Judicata

ALJ Poverstein determined that Sisneros was not disabled as of December 23, 1985. ALJ Connor held that this decision was *res judicata* as to Sisneros' condition prior to that date, and her decision was affirmed by the Appeals Council. This Court does not have jurisdiction to review the Commissioner's refusal to reopen a claim for disability benefits, or a determination that an earlier decision on a claim is *res judicata*. Califano v. Sanders, 430 U.S. 99, 107-09, 97 S. Ct. 980, 985-86 (1977); Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990). The only exception to the ban on judicial review occurs on the rare occasion when the refusal to reopen is challenged on constitutional grounds. Montoya v. Apfel, No.

---

[2]The decision of ALJ Connor is attached to this Analysis and Recommended Disposition.

3

99-2156, slip op. at 3 (10th Cir. May 8, 2000). No such claim was made in this case, nor is there any basis for such a challenge.

Thus, this Court may consider Sisneros' condition only since December 23, 1985. In addition, since Sisneros' date last insured is December 31, 1985, he must establish that his disability commenced prior to that date. Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1348-49 (10th Cir. 1990). Thus, in order to be eligible for Title II disability benefits, Sisneros must establish that he was suffering from a disability during the eight-day period between December 24-31, 1985. However, the ALJ may consider evidence of Sisneros' condition outside of this time period for the purpose of providing a full picture of the claimant's medical treatment history. Dugan v. Sullivan, No. 89-1121-C, 1991 WL 105230, at * 4 (D. Kan. May 31, 1991). For example, when the claimant's later medical records contain references to medical findings dating from the relevant period, or "disclose the severity and continuity of impairments existing before the earning requirement date or . . . identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." Baca v. Dept. of Health & Human Svcs., 5 F.3d 476, 479 (10th Cir. 1993).

### Standards for Determining Disability

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant throughout the first four steps of this process to prove disability, and if the claimant is successful in sustaining his burden at each step, the burden

---

[3]20 C.F.R. § 404.1520(a)-(f) (1999); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

then shifts to the Commissioner at step five. If at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are: at step one, claimant must prove he is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . .;"[6] at step three, the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[7] and, at step four, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's residual functional capacity ("RFC"),[9] age, education and past work experience, he is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he

---

[4]20 C.F.R. § 404.1520(a)-(f)(1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5]20 C.F.R. § 404.1520(b)(1999).

[6]20 C.F.R. § 404.1520(c)(1999).

[7]20 C.F.R. § 404.1520(d) (1999). If a claimant's impairment meets certain criteria, that means his impairments are "severe enough to prevent [him] from doing any gainful activity." 20 C.F.R. § 416.925 (1999).

[8]20 C.F.R. § 404.1520(e) (1999).

[9]The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (1999).

[10]20 C.F.R. § 404.1520(f) (1999).

cannot, in fact, perform that work.[11] In the case at bar, the ALJ made her dispositive

determination of non-disability at step five of the sequential evaluation.

## Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by

substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v.

Shalala, 21 F.3d 983 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient

for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a

mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th

Cir. 1992; Muse, at 789. In Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) the

Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the
> evidence, but an ALJ is not required to discuss every piece of
> evidence. Rather, in addition to discussing the evidence supporting
> his decision, the ALJ must also discuss the uncontroverted evidence
> he chooses not to rely upon, as well as significantly probative
> evidence he rejects. [Citations omitted].

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be

affirmed. The Court cannot reweigh the evidence or substitute its judgment for that of the

Commissioner. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

Sisneros claims that ALJ Connor erred in finding that he did not suffer from a

disability during the last weeks of December 1985. He argues that the ALJ erred in finding

that he retained the residual functional capacity to do a full range of light work, because the

evidence was uncontroverted that he was incapable of sitting for long periods of time during

---

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

the period in question. Sisneros also contends that he suffered from a psychological condition during this time, the factual underpinnings of which were not developed by the Administration. He asserts that this psychological condition constituted a nonexertional impairment, precluding the ALJ's reliance on the grids for her ultimate finding of nondisability.

## Residual Functional Capacity

The ALJ determined that, during the last week in December 1985, Sisneros had the residual functional capacity for a full range of light work and that nonexertional factors did not significantly alter this work capacity. (Tr. 20, 22). Light work involves lifting up to 20 pounds occasionally and up to 10 pounds frequently throughout a work day, a "good deal of walking or standing," or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) (1999).

The ALJ noted that she took into consideration the Social Security pain regulation at 20 C.F.R. § 404.1529, and found that Sisneros' "testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility." (Tr. 20, 22). This pain regulation, as well as 42 U.S.C. §423(d)(5)(A), require that a claimant present evidence of medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that could "reasonably be expected to produce the pain or other symptoms alleged."

There is no question that, during the last week in December 1985 and for many years before and after that date, Sisneros suffered from both lumbar and cervical back problems of

7

various sort. There is, further, no question that he sustained a broken ankle in December 1984. These conditions are well-documented by "medically acceptable clinical or laboratory diagnostic techniques." The issue is whether the conditions could reasonably be expected to produce the degree of pain alleged, during the period in question. The ALJ found that they could not.

The Court will generally give deference to the ALJ's conclusions regarding a claimant's credibility and "may not disturb the ALJ's finding when the appellant's complaints of pain are not supported by the medical evidence in the record." Campbell v. Bowen, 822 F.2d 1518,1522 (10th Cir. 1987). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

Once the claimant demonstrates a pain-causing impairment, the ALJ must consider all the evidence presented that could reasonably produce the pain alleged. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). Factors to be considered include the claimant's persistent attempts to find relief for the pain and his willingness to try any treatment prescribed, whether he had regular contact with a doctor, the possibility that psychological disorders combine with his physical problems, the nature of his daily activities, the dosage and effectiveness of any medications, and subjective measures of credibility that are peculiarly within the judgment of the ALJ, Id.; Hargis, 945 F.2d at 1489.

A. Evidence of Pain from Back Impairment

In her decision, the ALJ took note of Sisneros' testimony to the effect that, following back surgery in 1982, he failed to improve and was placed on medical retirement in June 1984

because his back and leg symptoms caused problems with prolonged sitting, standing, and walking. He stated that in December 1985 he could not sit for more than half an hour at a time and also had difficulty walking and standing. Sisneros further testified that he underwent a cervical fusion operation in 1990 after suffering neck, shoulder, and arm pain which got progressively worse from 1982 on and affected his ability to use his arm in 1985.

The medical records show that, between 1976 and 1989, Sisneros was seen frequently by various doctors with continuing complaints of pain in his back, leg, ankle, shoulder and neck. (Tr. 93-96, 189-198, 199-205, 206-260, 269-277, 280, 285, 330-339, 346, 347-351, 403-404, 326). For example, on October 27, 1981, he complained to his doctor of pain in his low back, radiating down his right leg; on December 9, 1981, he complained of pain going down his whole spine; on December 12, 1981, he reported that the pain was better, although there was still some pain in the right buttock. (Tr. 196-97). In January 1982, progress notes from Lovelace Hospital indicate that over the preceding six months, Sisneros reported having "intermittent pain" in his back, traveling down the back of his leg and into the right foot (Tr. 351). A CT scan in February 1982 showed slight disc bulging, with minimal radiculopathy.[12] (Tr. 349).

In March, 1982, progress notes indicate that conservative treatment had provided very little pain relief in the low back and right leg. (Tr. 348). Later that month, Sisneros was given a trial of epidural steroid injection and reported on March 24 that he had been relatively pain free for about two weeks. In May 1982, however, Sisneros complained of pain in his

_____

[12]Radiculopathy is defined as "disease of the nerve roots." Dorland's Illustrated Medical Dictionary (26th ed. 1981) at 1109.

9

neck and down his entire spine to the lower back. (Tr. 195). In October 1982, he was still having pain (Tr. 339), and in November 1982, he underwent lumbar surgery. (Tr. 195, 342-343).

In a Disability Report dated July 27, 1984, Sisneros reported that he has a "hard time" sitting or standing up. (Tr. 43). In August 1984, Sisneros underwent a consultative examination with an orthopedic surgeon, in which he stated he had severe back pain and limited motion of his back which rendered him unable to sit for long periods of time, that he was unable to squat or bend, and unable to lift anything weighing more than five pounds. (Tr. 74-75). Sisneros was taking Darvocet for pain in December 1984. (Tr. 93).

On March 26, 1985, Sisneros told his doctor that he had been hurting in the low back and shoulder. (Tr. 193). On April 12, 1985, his physician Dr. Hardy wrote on an insurance form that Sisneros suffered from a herniated disc and was "100 % disabled." (Tr. 87-88). Progress Notes dated April 24, 1985 and signed by Physician's Assistant Bishop Wenze and Sisneros' treating physician, Dr. Hardy, state that the "patient continues to be 100% disabled for employment at this time." (Tr. 330). On May 15, 1985, Sisneros told his doctor he had low back pain all the time. (Tr. 192).

On November 22, 1985, Sisneros reported pain under the right scapula. (Tr. 191). On May 23, 1986, his physician noted that he began having pain in the neck area, radiating into his right scapula, although on examination he showed good range of motion of the neck and no impairment of reflexes or grip strength. (Tr. 333). In September and November 1986, he reported that his back was very painful under the left scapula and between the shoulders and into the neck. (Tr. 190).

In April 1987, he was noted to have continuing back pain, radiating around the left leg; on exam, he was found to have a disk protrusion. (Tr. 330). In May 1988, he reported to his physical therapist that he had a gradual onset of right shoulder pain for approximately the past three years. He reported that some days are better than others, but overall there was no real change. (Tr. 271). Between April and October 1988, Sisneros continued to undergo physical therapy. (Tr. 273, 277, 280, 285, 328).

In October of 1988, Sisneros was admitted to St. Vincent Hospital with a myocardial infarction. A physical exam done during this hospitalization noted that Sisneros had a history of recurrent lumbar pain since 1980, as well as cervical disk disease responsible for paravertebral and scapular pain. It was noted at this time that his neck was supple with some tenderness but a good range of motion. (Tr. 217-220). An MRI taken in October 1988 showed a large herniated nucleus pulposis[13] at C 6-7, causing severe root and cord compression, and severe narrowing of the canal. (Tr. 354-55). On January 18, 1990, Sisneros underwent a cervical fusion and diskectomy operation. (Tr. 324-325). On October 5, 1990, Sisneros stated in his Disability Report that he still had "constant pain both in low back and shoulder blade area," and that he could not stand or sit for any period of time. (Tr. 161). In January 1992, Sisneros underwent further lumbar surgery for relief of a freshly herniated disk, causing "chronic back pain." (Tr. 321-323).

There is no question that Sisneros experienced back pain in greater or lesser degree throughout the period between 1984 and 1988. There are no specific entries in Sisneros'

---

[13] Nucleus pulposis is defined as "a semifluid mass of fine white and elastic fibers that forms the central portion of an intervertebral disk." Dorland's Illustrated Medical Dictionary 907 (26th ed. 1981).

medical records for late December 1985; however, it would be reasonable for the ALJ to conclude that his back pain continued during that month, as it had for the preceding years beginning from the date of onset, and continuing throughout the later years up to the date of the hearing. Records closest to the time period in question indicate the following:

Sisneros was taking Darvocet for his pain in December 1984. His back pain was present in March and May of 1985, although there is indication in the record that the pain had lessened by July of that year. In November 1985, Sisneros reported pain in the upper back and neck which continued throughout the succeeding years, waxing and waning, while Sisneros attempted conservative treatment including physical therapy. He finally underwent surgery for cervical fusion in 1990. Sisneros stated at his hearing that the 1990 surgery followed several years of progressively worsening neck and shoulder pain beginning in 1982, affecting his ability to use his arm in 1985. He also stated that, by June of 1984, he had a hard time sitting for any length of time, walking, bending, or picking anything up. He further testified that, in December 1985, he could not sit for longer than half an hour at a time. Dr. Harold Brown, the medical expert who testified at the hearing, stated somewhat contradictorily that although he found that the record did not substantiate a disability during the relevant period, he could not give an answer as to whether Sisneros' back problems were disabling during that time.

### B. Evidence of Pain from Ankle Impairment

Sisneros testified at his hearing that he broke his right ankle in December 1984, that he never regained full movement after that, and that his ankle continued to bother him if he walked too much. The medical records show that Sisneros sustained a broken ankle on

December 15, 1984. He underwent surgery with metal fixation, under the care of Dr. Jones, and was discharged with crutches. (Tr. 93-94). At a Disability Interview in December 1984, Sisneros stated that he broke his foot when he slid on snow while getting out of a car, and that he expected the foot would take about three months to heal. (Tr. 67).

Notes from December 27, 1984 to January 31, 1985 indicate that Sisneros' broken ankle was at first healing satisfactorily. He began physical therapy on January 31, 1985. (Tr. 95). On February 5, 1985, his ankle was examined; X-rays showed fragments in excellent position and healing on schedule. (Tr. 319). On February 27, 1985, Sisneros complained that physical therapy for the broken ankle was making his back worse. (Tr. 194). On February 28, his ankle was noted be healing well, with all fragments satisfactorily united. (Tr. 96). On April 19 and 25, 1985, he reported that he was better and was advised that he could dispense with crutches and begin to use a cane. (Tr. 193-194). On April 26, 1985, X-rays showed all fragments healed and the hardware in good position. He reported a swollen ankle on May 15, 1985 (Tr. 192), but by June 1985, Sisneros' ankle appeared to be essentially healed. (Tr. 96).

However, Sisneros continued to be bothered by ankle symptoms. On April 14, 1987, he was treated at St. Vincent Hospital for pain and swelling in the ankle which was not ameliorated by therapy. X-rays showed no specific arthritic changes, but metal removal was recommended for pain relief. (Tr. 205). Surgery was performed on September 16, 1987 to remove the orthopedic screws and relieve the pain. The operative report indicated that Sisneros was suffering from arthritis and "ossification of a posttraumatic nature" in the ankle. (Tr. 200-201). In October 1987 and January 1988, Sisneros seemed to be healing well (Tr. 199); however, by June 1988, he was complaining of chronic ankle pain with continued

13

swelling and discomfort. (Tr. 199). His physician recommended use of the TENS unit but added, "I know of no other specific interventions at this time that will help him." (Tr. 199).

The medical records contain no specific references to Sisneros' ankle during the time period in question. His doctors assumed that his ankle was essentially healed by June 1985; however, he continued to have pain which was not relieved by therapy. Two years later, he required surgery to relieve the pain. Sisneros testified at his hearing that in December 1985, he still had severe pain in his right ankle which impaired his ability to walk. He said that he never regained full movement in his ankle, and that he later developed arthritis. The medical expert testified that although he could not tell from the record the degree of severity of Sisneros' ankle condition in December 1985, he stated that Sisneros clearly had some disability from his ankle.

### C. The ALJ's Credibility Finding

The ALJ found that Sisneros was capable of doing light work in December 1985. She found no evidence on the record to suggest that, at that time, Sisneros was unable to lift up to 20 pounds occasionally and 10 pounds frequently, and to stand or walk for up to 6 hours out of an 8-hour work day with intermittent brief rest breaks. She found further that Sisneros' testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged, and it therefore lacked credibility. Applying the factors cited in Luna v. Bowen, *supra*, the Court concludes that the ALJ's credibility finding is not supported by substantial evidence.

It is clear from the medical evidence that Sisneros has suffered a variety of spinal

problems both before and after December 1985, and that he sustained a severe ankle fracture in 1984. There is evidence that Sisneros made persistent attempts over many years to find relief for the pain he felt in his lower back, upper back and shoulders, and ankle. He certainly had frequent contact with doctors from 1982 through the date of the hearing. His medical records document that he did indeed have herniated disks in the lumbar and cervical spine which required surgery on more than one occasion.

The ALJ found that Sisneros' allegation of severe shoulder and arm pain associated with his cervical disk disease, from 1982 and continuing through the December 1985 period in question, is refuted by the fact that his doctors did not perform corrective cervical surgery until 1990. The ALJ noted that "5 years of conservative treatments when the patient is complaining of severe, chronic disabling pain was a long time when there was a possibility that surgery would provide relief." (Tr. 20). The ALJ appears to be relying on the absence of medical records to establish an absence of pain. This is improper. Thompson v. Sullivan, 987 F.2d 1482, 1489-90 (10th Cir. 1993).

With regard to medication, the record shows that Sisneros was taking pain medication prior to December 31, 1985, his date last insured. The ALJ pointed to evidence that Sisneros was being treated for back pain with only "occasional Darvocet" in December 1984, and the medical expert, Dr. Brown, testified that this indicated that claimant's pain level was not severe at that time. Darvocet is a mild narcotic analgesic used for relief of "mild to moderate pain." Physician's Desk Reference 1567 (53d ed. 1999). Nonetheless, it s a prescription drug with a potency similar to codeine, Id., and its use is evidence of the existence of pain.

There is evidence that Sisneros' ankle injury caused him pain in the first half of 1985,

15

requiring him to use crutches and restricting his activities. The record indicates that, by the middle of that year, the fracture was healing well. The ALJ cited Dr. Brown's opinion that Sisneros' ankle appeared to be well on the way to complete recovery in December 1985, and that later-developing arthritis, although always a possibility, was not anticipated at that time. However, it is clear from the record that the ankle was not in fact healing appropriately. It continued to be swollen and painful, and Sisneros eventually needed surgery for relief of the pain.

Sisneros stated in various filings with the SSA that his daily activities have been limited and that he can't do much of anything around the house (although he also stated that his wife has traditionally done all of the housework and cooking). (Tr. 46, 65, 138, 144). He has some difficulty shaving but can take care of his own personal needs. He can drive for short distances. (Tr. 46, 65, 138). He makes his own lunch, visits with his children and can pick up his 15-20 pound grandson (Tr. 65). With regard to recreational activities, he stated that he still goes fishing occasionally but no longer attends sporting events and has had to give up coaching Little League. (Tr. 138).

This is a close case, which ultimately comes down to a credibility assessment. The pain-assessment factors established in Tenth Circuit case law were addressed by the ALJ; however, her credibility determination was not adequately linked to medical evidence on the record, and her finding that Sisneros retained a residual functional capacity for light work in December 1985 was not supported by substantial evidence. "Although this court ordinarily defers to the ALJ as trier of fact on credibility, . . . deference is not an absolute rule." Thompson, at 1490.

16

Because Sisneros must prove that he was disabled during a brief one-week time period, which fell between Christmas and New Year's Day in 1985 and did not result in any medical records, the ALJ would, of necessity, have to look at medical records created before and after the week in question in order to get the full picture of Sisneros' condition during that week. Consideration of such records is necessary in this case in order to determine the severity and continuity of claimant's impairments, and to identify impairments which could reasonably be presumed to have been present, during the crucial period. Baca, *supra*, at 479. Although the ALJ's *res judicata* holding irrevocably establishes an onset date of December 23, 1985, medical records prior to and after hat time may be consulted for purposes of obtaining the full picture of claimant's disability during the relevant period. Baca; Gold v. Secretary of HEW, 436 F.2d 38 (3d Cir. 1972).

Taking all of the above into consideration, the Court finds ample evidence on the record to support a finding that Sisneros experienced pain in his back, neck, shoulder, and ankle in December 1985, in the disabling degree alleged. The Court concludes that the ALJ's credibility finding is not supported by substantial evidence. Sisneros' pain constitutes a nonexertional impairment which must be taken into consideration on remand, in determining Sisneros' RFC.

### Psychological Impairment

Sisneros alleges that the ALJ erred in relying on the grids for her finding of no disability, because the record shows a nonexertional psychological impairment. The grids cannot be applied conclusively if the claimant has nonexertional limitations that significantly limit his ability to perform the full range of work in a particular RFC. Huston, 838 F.2d at

17

1131. In this case, the ALJ found that Sisneros "has not met his burden of establishing that he had any psychological impairment which caused more than minimal effects on his work-related mental capacities." (Tr. 19). This decision is not supported by substantial evidence.

The record regarding Sisneros' mental impairment is as follows:

In an unidentified letter of August 23, 1984 to the State Division of Vocational Rehabilitation, one of Sisneros' treating physicians (apparently Dr. Tyrone Hardy), wrote that in his opinion, Sisneros "is probably 100% disabled from any gainful employment unless a psychological program is established with this particular patient." (Tr. 70). He gave no further details.

On February 5, 1985, Sisneros was admitted to St. Vincent Hospital with an acute anxiety attack and adjustment disorder with depression. Sisneros was given antidepressive medication and was seen by Dr. Fitz, a psychiatrist "who provided considerable support and insight" and recommended continued treatment. Sisneros "improved dramatically" before being discharged. Progress Notes for this hospitalization indicate that Sisneros had a long history of a fairly active life until the preceding two years, following his back surgery, when he became dependent on his wife and family. This situation caused him depression and pain, but he "has generally coped well" and has good rehabilitation and retraining plans. (Tr. 225-229).

Medical records from St. Vincent Hospital on March 8, 1985 indicate that Sisneros was being treated at that time by Dr. Ray, a psychiatrist (Tr. 96), although Kevin Davis, a rehabilitation specialist, notes in a letter that Dr. Ray told him on March 11, 1985 that Sisneros had improved and probably would not need any additional treatments. (Tr. 90). A

18

May 23, 1985 office visit note from Dr. Riley indicates that although Sisneros' anxiety was well controlled at that time, it was nevertheless a chronic condition. (Tr. 313).

In a letter dated November 7, 1985, Dr. Ben Glover states, "Any patient who hasn't worked for as long as this patient has psychological overtones with reference to being rehabilitated into a productive work environment. Patient will need moderate occupational and psychological rehabilitation to return to gainful employment." (Tr. 187). This letter was discussed at the hearing on Sisneros' fourth application.

Although this letter is close in date to the relevant period, the ALJ indicated that she did not give the letter a great deal of weight because it was unsigned, because Dr. Glover was not a psychiatrist or psychologist, because it was phrased in terms of "any patient" rather than being directed specifically toward Sisneros' condition, because it noted that only "moderate" rehabilitation was needed, and because Dr. Glover had seen Sisneros only two or three times over a three-year period. (Tr. 18-19; 465-472). The Court sees no relevance to the fact that the letter was unsigned, as there has been no challenge to its authenticity. In addition, Dr. Glover specifically refers to Sisneros' need for psychological rehabilitation.

Progress notes from Lovelace in February 1986, signed by Dr. Hardy, state that Sisneros' chronic low back pain problem "has a moderate psychological overlay." (Tr. 334). In a June 23, 1989 Psychiatric Review Technique form, Sisneros' mental impairment was determined to be non-severe, in that his depression was controlled and he was undergoing no outpatient therapy or hospitalization for psychological problems. (Tr. 115-116).

At the January 1994 hearing, Sisneros testified that the pain made him depressed, that he was prescribed antidepressant medication by Dr. Hardy in 1985, and that he was still taking

medication at the time of the hearing. (Tr. 449). He stated further that the medications helped with the feelings of anxiety and allowed him to sleep better, and that he saw a psychiatrist "a couple of times." (Tr. 450).

In his filings with the SSA, Sisneros did not emphasize psychological problems; rather, he concentrated on his back, ankle, shoulder, and heart problems.[14] His failure to emphasize this aspect of his disability is not conclusive, however:

> Although her applications did not mention depression, the
> evidence Ms. Carter submitted to the ALJ included an evaluation
> by Dr. Baum . . . in which he diagnosed her as suffering from
> 'depression and associated neuropsychiatric symptoms' . . .
> The existence of Dr. Baum's diagnosis required the ALJ to
> develop the record concerning depression.

Carter v. Chater, 73 F.3d 1019, 1021-22 (10th Cir. 1996).

The duty to develop the record is triggered in the "presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997). Sisneros stated in a disability interview that he had worked all his life and was depressed over the prospect of having to stay at home. (Tr. 67). He also testified at the hearing in 1996 that the pain had caused him some problems with depression in 1985, and that he had been taking antidepressants since that time. He had seen a psychiatrist "a couple of times" (Tr. 449-450), and was hospitalized in 1985 for an acute attack of anxiety. In addition, Sisneros' medical records support the existence of a psychological impairment. (Tr. 70, 90,

---

[14]He did note in an April 1985 document, in response to a question about changes in his condition, that he had been seeing a psychiatrist and taking medication for anxiety. (Tr. 53).

95-96, 218-19, 225-29, 313, 334).

Under the circumstances, the ALJ had a duty to develop the record. "To require further investigation, . . . a claimant must raise the issue to be developed and show that it is substantial." Fromme v. Apfel, 185 F.3d 874 (Table, text in Westlaw), No. 98-7098, 1999 WL 394616, at *2 (10th Cir. June 16, 1999). Sisneros has made such a showing. The ALJ's finding that Sisneros' mental impairment was not severe during the relevant period in December 1985 is not supported by substantial evidence. The Court concludes that the case must be remanded for further development of the record on the issue of Sisneros' claims of depression, and for consideration of this non-exertional impairment at step five of the required analysis.

### Recommended Disposition

That Sisneros' Motion to Reverse be granted and the case be remanded to the Commissioner for further proceedings consistent with this analysis.

Lorenzo F. Garcia
United States Magistrate Judge

**DEPARTMENT OF
HEALTH AND HUMAN SERVICES**
Social Security Administration
**OFFICE OF HEARINGS AND APPEALS**

### DECISION

**IN THE CASE OF**                        **CLAIM FOR**

                                        Period of Disability and
JOSE R. SISNEROS                          Disability Insurance Benefits
(Claimant)

                                        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
(Wage Earner)                             (Social Security Number)

The present appeal arises following the filing of a request for
hearing by the above-identified claimant, Jose Sisneros, after he
had received earlier denials by the Social Security
Administration.

My decision is UNFAVORABLE to the claimant on the issues stated
below.  This decision is based on consideration of documentary
evidence of record listed as exhibits, as well as testimony
received at a hearing held on January 21, 1994 in Santa Fe, New
Mexico.  During the course of the present appeal, Mr. Sisneros
was represented by Roy T. Archuleta, non-attorney.

### ISSUES

The general issues are whether the claimant is entitled to a
period of disability and disability insurance benefits under
sections 216(i) and 223, respectively, of the Social Security
Act, as amended.  The Social Security Act defines "disability" as
the inability to engage in any substantial gainful activity due
to physical or mental impairment(s) which can be expected to
either result in death or last for a continuous period of not
less than 12 months.

The specific issues are whether the claimant was under a
"disability" and, if so, when such disability commenced and the
duration thereof; and whether the disability insured status
requirements of the Act are met for the purpose of entitlement.

Pursuant to the Act, the Secretary has established Social
Security Administration Regulations No. 4. The regulations
provide steps for evaluating disability (20 CFR 404.1520(a)).

### BACKGROUND OF CLAIMANT

Mr. Sisneros is a person "closely approaching advanced age" (age
54) but was a "younger individual" on June 15, 1984, his alleged
onset date. He has a partial college education. His past
relevant work was unskilled to semi-skilled in nature as a
corrections officer, a clerk specialist, an inventory officer and
a warehouse specialist. He alleges disability due to a back
condition.

### EFFECT OF PRIOR DETERMINATIONS

The record reflects that Mr. Sisneros has filed three prior
applications for disability benefits under Title II, on July 27,
1984, February 22, 1989, and October 5, 1990. He appealed the
denial of his first application, and after a hearing before an
Administrative Law Judge an unfavorable decision was issued on
December 23, 1985 (Exhibit 3). He requested review of that
decision by the Appeals Council, however on May 16, 1986 the
Appeals Council denied review because of untimely filing of the
request for review (Exhibit 4).

His applications from February 22, 1989 and October 5, 1990 were
denied initially and on reconsideration and were pursued no
further by him. At his hearing on January 21, 1994 I brought to
his attention that he had appealed his first application, but he
had not appealed the subsequent ones. He answered that he had
been able to read the notice of his right to appeal and his right
to representation, but that he had chosen to take the course of
action he subsequently took. I find no reason to disturb the
decision issued by the Administrative Law Judge on December 23,
1985, and Mr. Sisneros's application dated July 27, 1984 is not
reopened for reconsideration because the Administrative Law
Judge's decision is Res Judicata for that application.

However, in the interest of according Mr. Sisneros due process
and in consideration of the fact that he was unrepresented during
the period he filed his prior applications and indicated to me
that he did find the appeals process somewhat confusing, I have
reviewed the entire record and taken testimony at the hearing on

January 24, 1994 as to the issues surrounding the question of reopening his prior 1989 and 1990 applications. With reference especially to Exhibit B-41, while I do not find that letter to be new and material evidence, and I specifically find it to be a cumulative statement rendered by an associate of his treating physician, I have reviewed that exhibit as to its relevance to the period surrounding his date last insured. In doing so, I observed that the letter was not mentioned in the Administrative Law Judge's decision from December 23, 1985, and I feel that due process requires that I include that letter in my analysis of Mr. Sisneros's condition between December 24, 1985, the day following the date of the Administrative Law Judge's decision on his application dated July 27, 1984, and December 31, 1985, his date last insured.

For all of the above reasons, I am reopening Mr. Sisneros's prior applications from February 22, 1989 and October 5, 1990 for reconsideration herein. However, since I find the December 23, 1985 decision Res Judicata, my review is limited to the issue of his work-related functional capacities between that date and December 31, 1985, the date he last held insured status for the purposes of Title II disability eligibility.

## EVALUATION OF THE EVIDENCE
## AND RESIDUAL FUNCTIONAL CAPACITY

At his hearing on January 21, 1985 Mr. Sisneros testified that he injured his back in 1973, that in 1982 he underwent back surgery, that his condition failed to improve after surgery, and that he was placed on medical retirement in June 1984 because he was unable to continue in his job due to back and leg symptoms. He stated that his symptoms caused problems with prolonged sitting, standing and walking. In 1990 he underwent a cervical fusion, and in 1992 he underwent a lumbar fusion. Mr. Sisneros stated that his cervical fusion followed several years of neck pain with associated shoulder and arm pain from 1982 on, which became progressively worse. Those symptoms affected his ability to use his arm in 1985. He did not have surgery at that time because his doctors were trying conservative treatments, and since he was not working he did not have to use his arm very much. Around December 1985 he could not sit for more than a half an hour at a time, and he also had difficulties walking and standing. He broke his right ankle in December 1984. After that he did not

JOSE R. SISNEROS
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

4

have full movement of the ankle, and if he walked too much it
bothered him. Mr. Sisneros testified that he also had
difficulties sleeping and had become depressed because of the
pain, and was maintained on medications for depression.

A medical expert, Dr. Harold Brown, also appeared and testified
at the hearing as to his opinion of Mr. Sisneros's medical
condition around December 1985. Dr. Brown testified that Mr.
Sisneros had ankle surgery which took care of his ankle fracture
during that period. He developed arthritis in the ankle
considerably later on, so that was not a contributing factor to
his condition in December 1985. I called Dr. Brown's attention
to Exhibit B-27, page 26, which was the record from Mr.
Sisneros's hospitalization in December 1984 for his fractured
ankle. I asked Dr. Brown whether the observation that Mr.
Sisneros was taking only occasional Darvocet for his back
symptoms was consistent with his testimony of severe back pain
during that period. Dr. Brown stated that occasional doses of
that medication indicated to him that the claimant's pain level
was not severe. He gave his opinion that Mr. Sisneros's
condition did not meet or equal any impairment or combination of
impairments described in Appendix I, Subpart P, Regulations No.
4. He also gave his opinion that Mr. Sisneros would have been
limited to light or sedentary work in December 1985 because of
his cervical and lumbar disc disease.

I have reviewed Dr. Ben Glover's letter dated November 7, 1985
(Exhibit B-41). Dr. Glover stated in that letter that Mr.
Sisneros was 100 percent disabled from his previous employment,
that he could not sit for any length of time, and that he had
moderate discomfort walking, and stooping or twisting at his
lumbosacral area. He stated that any patient who had been
unemployed as long as that patient had been would have
psychological overtones with reference to rehabilitation. He
felt that the patient would need "moderate" occupational and
psychological rehabilitation to return to gainful employment, and
that his prognosis was very poor for returning to employment.

I find it noteworthy that Dr. Glover addressed Mr. Sisneros's
condition in terms of "any patient" who had been unemployed and
not specifically in terms of this particular patient's condition.
His opinion is generalized and appears speculative as what
"psychological overtones" might have caused Mr. Sisneros to have

difficulties rehabilitating. My review of the records during
December 1985 uncovers no references to any underlying
psychological disorder. Mr. Sisneros was medically retired in
June 1984 because he could not sit for the prolonged periods
required by his work, and there is no indication that he
experienced any psychological work-related functional impairment.

Mr. Sisneros testified that he returned to work in a voluntary
capacity after he was medically retired. He stated that he could
not continue volunteering because of his back symptoms, and he
did not mention any psychological difficulties. He testified
that after his first back surgery he was seen on a couple of
occasions by a psychiatrist, and was subsequently treated with
medications for depression. Otherwise he had required no
psychological therapy and he stated that he felt better after
taking the medication. Based on all the evidence, I find that
Mr. Sisneros had experienced only situational depression and that
condition was ameliorated by medications shortly after treatment
was begun. Dr. Brown testified at the hearing that Dr. Glover
gave a poor prognosis for rehabilitation because of the patient's
psychological condition. However, I find that Mr. Sisneros has
not met his burden of establishing that he had any psychological
impairment which caused more than minimal effects on his work-
related mental capacities.

As for his physical condition from December 24, 1985 through
December 31, 1985, Dr. Brown gave his opinion that Mr. Sisneros
would have been able to perform sedentary and light work
activities. Dr. Brown also stated that the "moderate"
rehabilitation referred to by Dr. Glover in his letter indicated
that intensive rehabilitation would not have been required, and
based on the type and frequency of medications Mr. Sisneros was
taking, his symptoms would not have been disabling for all work.

When I questioned Mr. Sisneros at his hearing as to his
capacities for standing and walking in December 1985 he replied
in vague terms that he did not have full movement of his ankle
after the fracture the year previously, and if he walked too much
the ankle bothered him. Dr. Brown gave his opinion that after
his ankle surgery Mr. Sisneros should not have had significant
difficulties with his ankle for a considerable period of time
until he developed arthritis in the ankle.

Moreover, while Mr. Sisneros testified to severe shoulder and arm pain associated with his cervical disc disease in 1985, I note that his physicians did not perform surgery until 1990. Although Mr. Sisneros testified that his doctors did not want to perform surgery until they had tried conservative measures, it appears to me that 5 years of conservative treatments when the patient is complaining of severe, chronic disabling pain was a long time when there was a possibility that surgery would provide relief. I do not, therefore, find Mr. Sisneros's testimony as to the frequency and severity of his arm and shoulder symptoms in December 1985 to be credible. I find no evidence to suggest that he was unable in December 1985 to lift up to 20 pounds occasionally and 10 pounds frequently throughout the day, and stand and walk for up to 6 hours out of an 8-hour work day with intermittent brief rest breaks. Based on all the evidence, and taking into consideration the requirements of the Social Security pain regulation at 20 CFR 404.1529, I find that from December 24, 1985 through December 31, 1985 Mr. Sisneros retained a residual functional capacity which supported a full range of light work.

## APPLICATION OF THE
## SEQUENTIAL EVALUATION

At step 1 of the sequential evaluation I find that Mr. Sisneros did not engage in substantial gainful activity from December 24, 1985 through December 31, 1985. At step 2 I find that his chronic back symptoms constituted a severe impairment. However, at step 3 I find that he had no impairment or combination of impairments of much severity as to medically meet or approach in severity any condition listed in Appendix I, Subpart P, Regulations No. 4. I have specifically reviewed sections 1.00.

At step 4 I find that Mr. Sisneros was unable to return to his past relevant work as of the date he last held insured status, since the demands of that work exceeded his residual functional capacity. Thus, the burden shifts to the Administration to determine that other work existed in significant numbers which he was able to perform, given his age, education, work experience and residual functional capacity.

Medical-Vocational Guidelines, or rules, are found in Appendix 2 of the Social Security Regulations. Where the findings of fact made with respect to a particular individual's vocational factors

(age, education and work experience) and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion whether the individual is or is not disabled. Citation of particular rule(s) will either take notice of jobs which exist in significant numbers throughout the national economy, or the lack thereof. (20 CFR Section 200.00(a), Appendix 2 of Regulations No. 4 and Social Security Ruling 83-11)

Rules 202.13, 202.14, 202.15, 202.20, 202.21 and 202.22 of Table No.2, Appendix 2 apply to an individual who has been both a "younger individual" and a person "closely approaching advanced age", whose past work was unskilled to semi-skilled in nature, who may or may not possess transferable skills, who has at least a high school education, and who has retained a residual functional capacity for light work. Since Mr. Sisneros's medical-vocational profile matched the above factors in December 1985, Rules 202.13, 202.14, 202.15, 202.20, 202.21, and 202.22 direct a conclusion that he was "not disabled."

Accordingly, Mr. Sisneros was not disabled under the standards of the Social Security Act as of the date he last held insured status on December 31, 1985.

### FINDINGS

After careful consideration of the entire record, I make the following findings:

1.  The claimant met the special earnings requirements of the Act on June 15, 1984, the date alleged became unable to work, and continued to meet them only through December 31, 1985.

2.  The claimant did not engage in substantial gainful activity from December 24, 1985 through December 31, 1985.

3.  The claimant has had the following impairments: chronic back pain, status-post discectomy.

4.  During times at issue, the severity of the claimant's impairment has not met or equaled a listed impairment as found in Appendix 1, Subpart P, Regulations No. 4.

5.  The claimant's testimony of subjective complaints and
    functional limitations, including pain, was not
    supported by the evidence as a whole in the disabling
    degree alleged and therefore lacked credibility.

6.  The claimant has had a residual functional capacity for
    at least light work in December 1985. Nonexertional
    factors did not significantly alter this work capacity.

7.  During times at issue, the claimant has been unable to
    perform past relevant work as a corrections officer, a
    clerk specialist, an inventory officer or a warehouse
    specialist.

8.  The claimant has been both a "younger individual" and a
    person "closely approaching advanced age" during times
    at issue.

9.  The claimant has a partial college education.

10. Reference to Rules 202.13, 202.14, 202.15, 202.20,
    202.21 and 202.22, Table No. 2, Appendix 2, Subpart P,
    Regulations No. 4, direct a conclusion that,
    considering the claimant's residual functional
    capacity, age, education, and work experience, he was
    not disabled as of the date he last held insured
    status.

11. The claimant was not under a "disability," as defined
    in the Social Security Act, as of the date he last held
    insured status.

## DECISION

IT IS MY DECISION THAT based on his applications filed on
February 22, 1989, October 5, 1990 and March 8, 1993, the
claimant is not entitled to a period of disability or disability
insurance benefits under sections 216(i) and 223, respectively,
of the Social Security Act.

_Carol A. Connor_

CAROL A. CONNOR
United States
Administrative Law Judge

MAR 2 2 1996
DATE